UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg Division

ELECTRONICALLY
FILED
Apr 28 2017
U.S. DISTRICT COURT
Northern District of WV

ROBERT L. MILLS II,
*individually and on behalf of all others similarly situated*,

        Plaintiff,

v.

INFOMART, INC.

        Defendant.

Civil No. 3:17-CV-48 (Groh)

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Robert L. Mills II, by Counsel, individually and on behalf of herself and others similarly situated, and as for his Complaint against the Defendant, Infomart, Inc. ("Infomart"), alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs, and attorneys' fees brought against Defendant pursuant to 15 U.S.C. §§ 1681a–x, the Fair Credit Reporting Act ("FCRA"). Infomart is a Consumer Reporting Agency ("CRA") governed by the FCRA.

2. When Mr. Mills applied for a job, it reported a civil judgment that was entered against Plaintiff in 2010 when he was on active military duty, but was later vacated. Defendant's reporting of that judgment did not indicate this final disposition.

3. Similarly, Defendant wrongly reported a criminal record belonging to a different wrong "Robert Mills."

4. The FCRA has long imposed specific requirements upon entities like Defendant engaged in the business of maintaining and selling consumer information. The conduct challenged in this Complaint violates several of the Act's general protections for all consumers as well as those imposed upon consumer reporting agencies ("CRAs") in the employment context.

5. Foremost amongst protections provided in the FCRA is the requirement that consumers be permitted to learn what a CRA has and may publish about them. CRAs are required to provide consumers with all the information in their files (known as a "file disclosure") when consumers request it. Importantly, CRAs must not only provide consumers with all the information they possess at the time of the consumer's request for a file disclosure, but CRAs must also divulge from whom they obtained it—the "sources" of the information.

6. First, therefore, Plaintiff brings a classwide claim under 15 U.S.C. § 1681g(a)(2) against Defendant for failing to the reveal the real sources of important information in his consumer file. Mr. Mills requested that disclosure in late 2016, and while Defendant obtained and republish derogatory information about Plaintiff from third-party TransUnion, it did not reveal TransUnion as a source of information. Infomart clearly violated 15 U.S.C. § 1681g(a)(2).

7. Second, Mr. Mills brings a classwide claim alleging a violation of 15 U.S.C. § 1681k(a). CRAs that provide consumer reports for employment purposes must meet certain requirements if they report adverse public records to an employer. Specifically, when they report such information in the employment context, CRAs must either provide contemporaneous notice that they are doing so (to enable prophylactic action by the

consumer) or maintain strict procedures designed to ensure that the information they report is always complete and up-to-date. 15 U.S.C. § 1681k(a).

8. Defendant reported information about Plaintiff and similarly-situated consumers to a potential employer (commonly known as a background check), and included adverse criminal and civil-judgment records. Defendant failed to comply with the contemporaneous notice requirement of Section 1681k(a)(1) because it sent Plaintiff no notice when it reported this information.

9. And Defendant entirely failed to report the complete, up-to-date criminal and civil-judgment records – it did not and systemically does not obtain full personal identifiers with its criminal records and does not obtain up to date dispositions for its civil records.

10. Plaintiff also brings an individual claim against Defendant 15 U.S.C. § 1681e(b) because it failed to take reasonable steps to assure the maximum possible accuracy of the information it reported. Reasonable procedures would have shown that Plaintiff's civil judgment had been vacated and that the criminal record belonging to a different Robert Mills or, at least, that Defendant did not have enough information to confirm the match of the criminal record to Plaintiff and should not have reported it.

## JURISDICTION

11. The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

12. Venue lies properly in this District and Division pursuant to 28 U.S.C. § 1391(b)(2). Mr. Mills resides in this District and Division, which is where he suffered the harm alleged herein. Defendant Infomart is a nationwide company with employees and

witnesses in multiple states. It regularly does business here and sells reports about numerous West Virginia consumers.

## PARTIES

13. The Plaintiff, Robert L. Mills II, is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

14. Defendant Infomart, Inc. is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) that regularly conducts business in the State of West Virginia. It regularly gathers and reports information to third parties for the purposes of making determinations for eligibility for things such as employment or credit, for a fee.

## FACTS

15. Plaintiff Mills applied for employment in 2015. His prospective employer ordered a background check, which is a consumer report governed by the FCRA, on Plaintiff shortly thereafter.

16. Infomart completed the report on or after April 30, 2015. The report erroneously attributed to Plaintiff a criminal record that does not belong to him—it belonged to a stranger Robert Mills.

17. The Infomart report also disclosed a civil judgment against Plaintiff from 2010, but failed to report its up to date status - that the judgment had been vacated.

18. Despite reporting this negative criminal and civil information about Plaintiff, Infomart failed to provide him with contemporaneous notice that it was reporting the information to Plaintiff's potential employer. Defendant likewise failed to use strict procedures designed to ensure the information it reported was complete and up-to-date, as

its entry of the civil judgment did not reflect the most-current status of that judgment at the time of the report—vacated.

19. Soon after the employer received the Infomart report about Plaintiff, it informed him that he would not be hired due to the erroneous information in his Infomart report. He did not however ever then see his report.

20. In December 2016, Plaintiff wrote to Defendant and asked for his FCRA file disclosure.

21. Mr. Mills' InfoMart report listed the unvacated civil judgment, Defendant did not divulge TransUnion as a source of information in Plaintiff's disclosure.

22. Instead, Defendant listed information related to Plaintiff's supposed criminal, credit, and civil judgment histories as though Defendant gathered that information on its own. These representations were untrue, as Defendant obtained some information it reported to the employer about Plaintiff from TransUnion. Though Infomart should have listed TransUnion as a source of information to comply with Section 1681g(a)(2), words or names such as "TransUnion," "Trans Union," or "TU" do not appear anywhere in Plaintiff's file disclosure. The Class Plaintiffs never received a letter or any other communication from Defendant "at the time" that their respective reports were furnished.

23. Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon the Plaintiffs' ability to obtain or maintain employment, Defendant failed to provide them with notice "at the time" that it sold a report containing the public record information, together with the name and address of the person(s) to whom such information was being reported.

24. Defendant does not have any procedure to comply with 15 U.S.C. § 1681k(a)(1).

25. Further, Infomart, as a matter of uniform and common practice, does not avail itself of the second option in Section 1681k(a)—that of subsection k(a)(2)—of having in place strict procedures to ensure the public record information it reports is complete and up-to-date.

26. Defendant is not the type of entity that can avail itself of the compliance option set forth at 15 U.S.C. § 1681k(a)(2). This section can only be applicable if Defendant has in place—before any report was furnished—strict procedures designed to ensure that it did not furnish or include in its reports any public records for which it did not receive, possess, or provide the complete and up-to-date public record.

27. A § 1681k(a)(2) option is not available to Defendant because the civil public records it furnishes to third parties are obtained from TransUnion, which itself concedes that its public records reporting cannot satisfy the up-to-date requirement at 1681k(a)(2). TransUnion thus sends §1681k(a)(1) notices.

28. Defendant reported this erroneous information without sending Plaintiff the notice referenced in 15 U.S.C. § 1681k(a)(1).

**CONGRESS' PURPOSE IN ENACTING THE FCRA'S PROTECTIONS**

29. Enacted in 1970, the FCRA's passage was driven in substantial part concerns: that consumer reports were being used for employment purposes without adequate protections against the harms caused by widespread errors and inaccuracies.

30. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and

to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

31. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information like criminal history. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

32. Like Congress, numerous states have similarly recognized that the reporting of old adverse information harms job applicants and have imposed similar bans. *See, e.g.*, N.Y. Gen. Bus. Law § 380-j; Tex. Bus. & Com. Code Ann. § 20.05; California Civil Code § 1786.18(a)(7); N.H. Rev. Stat. Ann. § 359-B:5.

33. Further, the protections enacted at 15 U.S.C. §1681g(a) were expressly designed by Congress to address the very circumstances presented here. Congress recognized the denial of this information as substantively harmful. Infomart's violations of §1681g(a) caused a judicially recognized informational injury.

34. Defendant did concrete harm to Plaintiff and similarly-situated consumers and presented a portrait of them to prospective employers that was worse than it would have been had Defendant followed the law. This violation of law was a concrete harm.

### DEFENDANT'S CONDUCT WAS WILLFUL

35. Defendant is aware of its obligations under the FCRA, but chooses not to comply, because the costs of compliance would harm its bottom line and impair its business model. Discovery will show that Defendant routinely fails to reveal its true sources of public-record information, like Trans Union, in its FCRA file disclosures. It makes this

choice despite the clearly worded requirement in the FCRA that CRAs reveal the sources of the information they report.

36. At all times pertinent to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, Defendant's conduct is willful because it was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions in other states critical of similar conduct; and Infomart will continue to engage in this conduct because it believes that there is greater economic value in hiding information from consumers, as well as collecting and reporting derogatory public record information than updating consumers' reports with information that would fully cancel or render the previous reporting of the public record irrelevant.

37. The requirements of 15 U.S.C. §§ 1681e(b), 1681g(a)(2) and 1681k(a) are well established, pellucid and objectively clear.

38. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

39. Defendant obtained and had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other members of the classes of their rights under the FCRA.

40. Plaintiffs allege that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

41. When Defendant undertook its business model, it considered and understood that it would be later challenged by consumers as governed and regulated as a FCRA consumer reporting agency.

42. Nevertheless, Defendant made an economic decision that it would accept the risks of harming consumers in order to avoid greater expenses necessary to obtain complete and current public records and maximize profit.

43. Defendant could have instituted a procedure of verifying the records it reports before reporting them, as some CRAs do, but it chose not to do so, despite the fact that this created FCRA liability. Defendant's decision not to verify its reports by contemporaneously reviewing the public record itself was based on Defendant's profit motive.

44. Defendant failure to follow a procedure to avoid reporting public records that clearly lacked sufficient identifying information was in violation of the FCRA.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681g(a)(2)
### Class Claim

45. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

46. **The 1681g(a)(2) Class.** Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows ("the 1681g(a)(2) Class"):

> All natural persons who requested a copy of their consumer file from Infomart on or after December 27, 2014, and received a report that failed to

identify the source(s) of the information (*i.e.*, Infomart's third party vendor) for any civil-judgment, lien or bankruptcy in the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

47. **The 1681g(a)(2) West Virginia Sub-Class.** Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of an alternate Sub-Class class initially defined as follows ("the 1681g(a)(2) West Virginia Sub-Class"):

All natural persons residing in West Virginia on the date they requested a copy of their consumer file from Infomart on or after December 27, 2014, and received a report that failed to identify the source(s) of the information (*i.e.*, Infomart's third party vendor) for any civil-judgment, lien or bankruptcy in the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

48. The following allegations are made as to both the Class and the Sub-Class.

49. **Numerosity.** Discovery will show that the 1681g(a)(2) Class is so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by the Defendant and through of its third party vendor. The class members may be notified of the pendency of this action by published and/or mailed notice.

50. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Infomart failed to properly disclose and/or falsely identified the source of its criminal conviction information in consumer's consumer files; (b) whether this conduct constituted a violation of the FCRA;

and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

51. **Typicality.** Discovery will show Plaintiff's claims are typical of the claims of each putative Class Member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681g(a)(2). This claim challenges Infomart's consumer reporting disclosures and does not depend on any individualized facts. Discovery will further show that Infomart obtains all of its civil judgment data under the same contract from the same vendor. Infomart's notice and knowledge of the challenged reporting problem is the same for Plaintiff as for the putative Class. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

52. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause him not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

53. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest

individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

      b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Infomart's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. A win for one consumer would set the law for every similarly situated consumer.

54.    Defendant violated 15 U.S.C. § 1681g(a)(2) by failing to disclose the name of the source of the information in a consumer's file at the time of the request.

55.    In the alternative, Defendant violated 15 U.S.C. § 1681g(a)(2) by falsely identifying the source of the information in a consumer's file.

56.    Defendant's violation of 15 U.S.C. § 1681g(a)(2) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

57. Plaintiff and the putative Class Members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681k(a)
## Class Claim

58. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "1681k Class") defined as follows and of which he is a member:

> All natural persons residing in the United States (a) who were the subject of a report sold by Infomart; (b) within the two year period preceding the filing of this action and during its pendency; (c) where the records of Infomart or TransUnion indicate that the report was furnished for an employment purpose, and (d) where the report contained at least one adverse civil judgment, (e) which, at least thirty (30) days prior to the date of the report had been satisfied, vacated or otherwise dismissed.

> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

60. In the alternative, Plaintiff alleges the following "West Virginia 1681k sub-class":

> All natural persons residing in West Virginia (a) who were the subject of a report sold by Infomart; (b) within the two year period preceding the filing of this action and during its pendency; (c) where the records of Infomart or TransUnion indicate that the report was furnished for an employment purpose, and (d) where the report contained at least one adverse civil judgment, (e) which, at least thirty (30) days prior to the date of the report had been satisfied, vacated or otherwise dismissed

Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

61. All of the following allegations are true as to both Class and the Sub-class.

62. The Classes are so numerous that joinder of all class members is impracticable. Defendant produces reports nationwide, and has produced thousands of reports on consumers during the class period, many of whom are members of the Classes. The names and addresses of class members are identifiable through documents maintained by Defendant and its customers, and TransUnion. Class members may be notified of the pendency of this action by published and/or mailed notice.

63. Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories. Defendant routinely failed to send the required notices during the full class period or follow the procedures required by the statute. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiff's claim rises or falls.

64. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendant's conduct and procedures were uniform to the class members; (b.) whether Defendant sent the required notices; (c.) whether Defendant was governed by the FCRA and §1681k(a); and (d.) whether Defendant acted willfully in its failure to design and implement the procedures required by 15 U.S.C. § 1681k(a)(2). Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

65. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of their responsibilities to the putative class and have accepted such responsibilities.

66. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

67. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

68. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a. As alleged herein, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers harmed by Defendant's FCRA violation would likely be unaware of their rights under the law, the identity and procedures of the Defendant or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time.

69. The consumer reports of the Named Plaintiff and of each member of the Section 1681k Classes were furnished for an employment purpose and contained one or more public records of the type that may affect an employer's hiring decision.

70. As to the Named Plaintiff and each Class member, Defendant uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

71. Upon information and belief, Defendant does not send the required § 1681k(a)(1) notices to any consumer at the time that it provides an employment-purposed consumer report that contains public record information that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment. Upon information and belief, this conduct is consistent and uniform across time, jurisdictions, and consumers.

72. Similarly, Defendant does not ever maintain strict procedures designed to ensure that it only furnishes complete and up-to-date public records. In fact, it never or almost sells or furnishes the complete public record and instead only obtains and provides

the very limited data available through a batch, automated or Internet search means of gathering its data.

73. Defendant's failure to maintain strict procedures designed to ensure that it did not furnish incomplete or out of date public records regarding Mills and the putative class members violated 15 U.S.C. § 1681k(a)(2).

74. Defendant's failure to timely provide the required FCRA notices to Plaintiff and the putative class members violated 15 U.S.C. § 1681k(a)(1).

75. Defendant's conduct, action, and inaction was willful, rendering it liable for statutory between $100 and $1,000 per consumer and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76. Plaintiff and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

77. Defendant reported negative information about Plaintiff and the Class and Sub-Class in the employment context, which triggered the obligation to either: (1) provide the consumer with contemporaneous notice that Infomart was reporting the negative information and to whom; or (2) utilize strict procedures to ensure the information it reported was complete and up-to-date.

78. Defendant did not provide Plaintiff or putative class members with contemporaneous notice, and the civil judgments or liens it reported were not up-to-date because they failed to show the most-recent status as satisfied, vacated or otherwise dismissed. By these failures, Defendant violated 15 U.S.C. § 1681k(a).

17

79. Defendant's violation of 15 U.S.C. § 1681k(a) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n.

80. Plaintiff and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Individual Claim

81. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

82. Defendant violated 15 U.S.C. § 1681e(b) as to the Plaintiff by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it published and maintained concerning Plaintiff.

83. As a result of this alleged conduct, action, and inaction, Plaintiff suffered actual damages.

84. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, on behalf of himself and the putative Class Members, moves for class certification and for statutory and punitive damages, as well as attorneys' fees and costs against the Defendant for his class claims, as well as actual, statutory, and punitive damages, as well as his attorney's fees and costs for his individual claim; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

ROBERT L. MILLS II, *individually and on behalf of those similarly situated,*

/s/ John W. Barrett
John W. Barrett, WVSB #7289
Ryan M. Donovan, WVSB #11660
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555 – Telephone
(304) 342-1110 – Fax
E-mail: jbarrett@baileyglasser.com
E-mail: rdonovan@baileyglasser.com


Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
**KELLY & CRANDALL, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Fax
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601

(757) 930-3660 – Telephone
(757) 930-3662 – Fax
E-mail: lenbennett@clalegal.com
E-mail: craig@clalegal.com

***Counsel for Plaintiff***